IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TINA J. GROUT,

                Plaintiff,                                   CV-06-1414-ST

      v.                                          FINDINGS AND
                                              RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                      Defendant.

STEWART, Magistrate Judge:

Plaintiff, Tina Grout ("Grout"), challenges the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC §§ 405(g) and 1383(c).

Grout alleges disability beginning October 1, 1995, due to degenerative disk disease, attention deficit hyperactivity disorder ("ADHD"), depression, anxiety and migraines. She was age 34 at the alleged onset of her disability and age 46 on the date of the Commissioner's decision. Her

1 - FINDINGS AND RECOMMENDATION

education includes high school and about one year of college.  Grout has worked as a mail clerk, switchboard operator, nursery worker, back-up cook, berry-sorter, general clerk and casino cashier. She stopped working in October 1995 because of "a lot of mental problems" and a bad back.  Tr. 164.[1]

Grout had insured status under the Social Security Act through December 31, 2000.  To prevail on her Title II claim, she must establish that she was  disabled on or before that date.  42 USC § 423(a)(1)(A).  *See Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).  For the reasons set forth below, the Commissioner's decision denying benefits should be affirmed.

## ALJ'S DECISION

The burden of proof rests upon the claimant to establish disability.  *Tackett v. Apfel,* 180 F3d 1094, 1098 (9th Cir 1999); *Roberts v. Shalala,* 66 F3d 179, 182 (9th Cir 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 USC §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ applied the five-step disability determination procedure described in 20 CFR §§ 404.520, 416.920.  *See Bowen v. Yuckert,* 482 US 137, 140 (1987).  Grout challenges the ALJ's determination at step four of the process that Grout retains the residual functional capacity ("RFC") to return to her past work as a casino cashier.  She challenges the ALJ's alternative finding at step five that Grout's RFC leaves her able to perform other work in the national economy.

A claimant's RFC is an assessment of the sustained work-related activities she can still do on a regular and continuing basis, despite the limitations imposed by her impairments.  20 CFR

---

[1] "Tr." refers to the official transcript of the administrative record.

§§ 404.1520(e), 416.920(e), 404.1545, 416.945; Social Security Ruling ("SSR") 96-8p.  The ALJ

assessed Grout's RFC as follows:

> [T]he claimant has the residual functional capacity to perform
> sedentary exertional level activities compromised by exertional and
> non-exertional limitations.  These include only occasional public
> contact, occasional stooping and kneeling, and no climbing of ladders
> or scaffolds.

Tr. 24.

The ALJ received testimony from a vocational expert ("VE") who opined that Grout's RFC

would not preclude the work-related activities required in her past work as a casino cashier.  The

VE also identified examples of work in the national economy that could be performed by a

hypothetical person with Grout's age, education, work experience and RFC.  The ALJ concluded

that Grout was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record.  42 USC

§ 405(g); *Andrews v Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial evidence means more

than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Id.*

If substantial evidence can reasonably support either affirming or reversing the

Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner.

*Batson v Comm'r of Soc. Sec.*, 359 F3d 1190, 1193 (9th Cir 2004).  The Commissioner's decision

must be upheld, even if the "evidence is susceptible to more than one rational interpretation."

*Andrews*, 53 F3d at 1039-40.

## DISCUSSION

Grout contends the ALJ failed to assess her RFC accurately and relied on inadequate vocational testimony in reaching his decision.

### I.    RFC Assessment

Grout argues that the ALJ erred because the RFC assessment does not contain functional limitations for every severe impairment or for all severe and/or non-severe impairments, singly or in combination.

The first argument assumes a legal obligation the regulations do not impose.  When an ALJ finds a medically severe combination of impairments, there is no regulatory requirement that the ALJ attribute specific functional limitations to each impairment separately.  Instead, the ALJ is required to consider the combined effect of all of the claimant's impairments throughout the decision-making process.  20 CFR §§ 404.1523, 416.923.

Grout argues that by identifying an impairment as severe, the ALJ admits that functional limitations result from that impairment.  This overstates the significance of the step two finding.  At step two, the ALJ's task is to determine whether any combination of impairments has more than a minimal impact on the claimant's ability to do basic work activities.  The inquiry is a *de minimis* screening tool to dispose of groundless claims before evaluating all the evidence in the remaining steps.  *Smolen v. Chater*, 80 F3d 1273, 1290 (9th Cir 1996).

For the purposes of step two, an ALJ considers an impairment severe unless the medical evidence clearly establishes that the claimant's impairments have no more than a minimal effect on the claimant's ability to do basic work activities.  SSR 85-28.  Contrary to Grout's argument, by

finding a severe impairment at step two, the ALJ admits only that the medical evidence does not clearly establish the absence of severe impairments.

The identification of specific functional limitations is done later in the decision-making process during the evaluation of the claimant's RFC. At that stage, the ALJ is not limited to the medical evidence, but must account for all the evidence. The ALJ must consider the claimant's description of symptoms, medical opinions, lay statements and any other relevant evidence in the record. SSR 96-8p. The burden of establishing a claimant's functional limitations is on the claimant. *Yuckert*, 482 US at 146.

Here the ALJ was unable to find that the medical evidence of degenerative disk disease, obesity, a history of pulmonary emboli, nicotine addiction and substance abuse clearly established that Grout's claim was groundless. He correctly proceeded through the remaining steps of the decision-making process and evaluated all the evidence in the record to determine Grout's functional limitations.

Grout contends the ALJ should have found that she could hold her head in a flexed position for only a limited time, due to degeneration in the cervical spine. However, Grout failed to identify any evidence that she experiences a limited ability to hold her head in a flexed position. She does not assert that the ALJ improperly evaluated evidence of such a functional limitation. Accordingly, the proposed finding is purely speculative and properly omitted from the ALJ's RFC assessment.

The same is true of Grout's asserted limitations from obesity, history of pulmonary emboli and nicotine addiction. Although Grout believes the ALJ should have found functional limitations specifically attributable to each of these conditions, she offers only theoretical limitations unsupported by evidence. This does not satisfy her burden of proof. It is not appropriate to simply

make broad assertions on the assumption that the court will examine the record in order to find whether any evidence supports those assertions.  Accordingly, Grout's first argument should be rejected.

In her second argument, Grout correctly asserts that an ALJ must consider all medically determinable impairments, whether severe or non-severe, in assessing a claimant's RFC.  20 CFR §§ 404.1523, 416.923.  However, Grout incorrectly asserts that the ALJ failed to do so.  The ALJ's decision reflects that he considered the objective medical evidence, the medical opinions, the symptoms Grout described and the reports of two lay witnesses who know Grout well and observed her extensively.    The ALJ evaluated all the evidence of Grout's functional limitations and incorporated into his RFC assessment those functional limitations that were reasonably supported by the evidence.  In doing so, the ALJ properly considered the combined effect of all of her severe and non-severe impairments and the functional limitations attributable to them.

Grout contends the ALJ should have included functional limitations for migraines, including absenteeism and limitations in attention or concentration.  The ALJ found that Grout's migraines were controlled by medication.  Tr. 22.  In October 2002, Grout reported a personal and family history of migraines to Diane Pratt, MD.   Dr. Pratt noted that these were treated with an Imitrex nasal inhaler "with good results." Tr. 381.  In March 2003, Dr. Pratt noted that Grout's migraines were infrequent and that her Imitrex inhaler seemed to remain effective.  Tr. 355.

Although headaches and migraines are mentioned elsewhere in the record, these are generally references to her history rather than accounts of current treatment.  The ALJ could reasonably conclude from the treatment record that Grout's migraine headaches were infrequent and controlled with medication.  In addition, Grout failed to identify credible evidence that her migraines

cause absenteeism or deficits in concentration or attention. Accordingly, she failed to carry the burden of proof on this issue.

Grout contends the ALJ erroneously omitted from his RFC assessment functional limitations caused by her psychological conditions. The ALJ found that Grout's mental impairments restricted her to only occasional public contact. Tr. 24. Grout does not identify evidence of additional functional limitations or assert that the ALJ ignored or improperly evaluated such evidence. She cites four references in her treatment records indicating that she was diagnosed with depression and treated with medication. Tr. 313, 355, 407, 408. The ALJ acknowledged that Grout also had past diagnoses of posttraumatic stress disorder and ADHD. Tr. 22.

A medical diagnosis without functional limitations has no vocational significance. The claimant has the burden of proving any limitations in her ability to do basic work activities. Grout did not show that mental impairments limited her ability to understand, remember or carry out simple instructions, use judgment, respond appropriately to co-workers, supervisors and usual work situations or deal with changes in a routine work setting. *Mayes v. Massanari,* 276 F3d 453, 459 (9th Cir 2001); *Roberts*, 66 F3d at 182. The mere fact that a condition has been acknowledged with a medical diagnosis does not establish functional limitations. *See Key v. Heckler,* 754 F2d 1545, 1549-1050 (9th Cir 1985); *Young v. Sullivan,* 911 F2d 180, 183-184 (9th Cir 1990).

The ALJ noted that Grout was discharged from mental health services for frequently failing to attend scheduled therapy and, more recently, had declined counseling. Tr. 23, 815, 824. Grout required adjustments in antidepressant medication, from time to time, but she and her physicians noted that her symptoms were well controlled by medications. Tr. 381, 794. The ALJ could

reasonably believe that Grout would have complied with treatment recommendations if her mental impairments had included debilitating symptoms.

The ALJ also relied on the expert opinion of the agency reviewing psychologists who found that mental health factors impose no more than mild restrictions in activities of daily living, moderate limitations in social functioning, mild difficulties in maintaining concentration, persistence and pace and no episodes of decompensation.  Tr. 23, 726.  Grout did not challenge these findings or point to evidence that her mental health imposes additional functional limitations.  Accordingly, she did not satisfy her burden of proof on this issue.

Grout contends the ALJ erroneously failed to restrict work with her hands in front of her body due to an alleged, though undiagnosed, condition in her right shoulder.  Grout argues that such a restriction is supported by her own testimony, which the ALJ found lacking in credibility.  Tr. 25.  Grout testified that her shoulder hurt with constant movement of her hands in front of her body, as when washing dishes or vacuuming.  Tr. 883.  Notably, Grout does not challenge the ALJ's credibility determination.

Grout contends that such a restriction is also supported by a long history of right shoulder complaints and treatment, citing treatment records showing physical therapy after a motor vehicle accident in October 1996.  These include short-term range of motion limitations in the right shoulder, but her shoulder range of motion was within normal limits after Grout discontinued physical therapy in March 1997.  Tr. 234.  Grout also cites treatment records establishing another period of subjective shoulder pain for several months in 2002.  However, these do not include objective or clinical findings of functional limitation in the shoulder.  Tr. 369-95.

The evidence cited by Grout does not establish an ongoing shoulder impairment that lasted for a continuous period of 12 months. Accordingly, Grout failed to satisfy her burden of proving that she had shoulder limitations that should have been included in the ALJ's RFC assessment.

Grout contends the ALJ erroneously failed to include that she cannot sit for very long due to an alleged condition in her hips. Grout testified that her hips begin to hurt after sitting for one hour at a time. Tr. 878. Her treatment records show no functional limitations in the hips when she discontinued physical therapy in March 1997. Tr. 234. Later records reflect subjective complaints of soreness in the hips during 2002, but these do not appear to be associated with sitting and there are no objective or clinical findings of specific functional limitations. Tr. 371-95. This evidence is not sufficient to satisfy Grout's burden of proving that a restriction in her ability to sit should have been included in the ALJ's RFC assessment.

Finally, Grout contends the ALJ erroneously failed to find her disabled based on the frequency with which she undergoes medical treatment. The VE testified that a hypothetical person who missed work at unpredictable times four to eight hours a week would not be able to sustain competitive employment. Tr. 895. Grout claims her treatment records show that her medical care would exceed four to eight hours a week, citing 404 pages of treatment records. She did not identify any week in which she actually spent four to eight hours receiving medical care, much less demonstrate that she did so regularly. Accordingly, she failed to satisfy her burden of proving that the ALJ should have limited her RFC by indicating she would require unpredictable absences four to eight hours a week to receive medical care.

In summary, the ALJ evaluated all the evidence Grout offered in support of functional limitations and incorporated into his RFC assessment those limitations he found supported by the

record.  Grout offers no basis upon which the court could conclude that the ALJ's interpretation of

the evidence was erroneous or unreasonable.  Accordingly, the court should not disturb the ALJ's

RFC assessment.  *Andrews*, 53 F3d at 1039-40; *Batson,* 359 F3d at 1193.

## II.    Vocational Evidence

Grout challenges the vocational evidence on two grounds.  First, she asserts the ALJ violated

her right to due process by terminating her attorney's examination of the VE in regard to step five

of the sequential evaluation process.  Tr. 900.  Second, she contends the VE's testimony failed to

show a significant number of jobs exist that a person with her RFC could perform.

At the hearing, the VE described Grout's past relevant work in terms of the level of skill and

physical exertion required for each occupation.  Tr. 892-93.  The VE testified that a person with

Grout's RFC and vocational factors of age, education and work experience could perform the work-

activities required in her past work as a casino cashier.  Tr. 894.

Based on this testimony, without regard for later vocational testimony about other work in

the national economy, the ALJ concluded that Grout was able to perform past relevant work and

found her not disabled at step four of the sequential evaluation.  Tr. 30.  *See* 20 CFR

§§ 404.1560(b)(3), 416.960(b)(3) (if the claimant can do past relevant work, the claimant is not

disabled and the ALJ need not consider whether the past relevant work exists in significant numbers

in the national economy) and *Barnhart v. Thomas,* 540 US 20, 25 (2003) (step four can result in a

finding of no disability without inquiry into whether the claimant's past relevant work exists in the

national economy; the regulations explicitly reserve inquiry into the national economy for step five).

The VE proceeded to testify about other jobs in the national economy that a person with

Grout's RFC could perform.  Tr. 894-95.  Grout's attorney posed a line of questions about the

foundation for the VE's opinion regarding the number of jobs in the occupations she identified. The ALJ allowed this examination to continue for several transcript pages, but ultimately did not permit Grout's counsel to pursue the inquiry to his satisfaction. Tr. 900.

Both of Grout's challenges go to the VE's later testimony which formed the basis of the ALJ's alternative finding at step five. Even if Grout prevailed on both challenges, it would not disturb the ALJ's determination at step four that she can perform her past relevant work and is not disabled. Accordingly, whether or not the ALJ erred, the asserted errors were harmless because they occurred during a step the ALJ was not required to perform. *See Matthews v. Shalala,* 10 F3d 678, 681 (9th Cir 1993) (any error in the hypothetical to the VE was harmless where VE testimony was unnecessary because the claimant failed to show he could not do past relevant work).

If it were necessary to address the merits of Grout's objections, she would not prevail. She was not deprived of due process by the ALJ's limitation of cross examination. The ALJ was not required to permit extensive inquiry into the foundation of the VE's opinion. The VE's expertise provides the necessary foundation for her testimony, and no additional foundation is necessary. *Bayliss v. Barnhart,* 427 F3d 1211, 1218 (9th Cir 2005).

Grout asserts for the first time on appeal four additional categories of questions she believes the ALJ should have permitted. First, she asserts that she would have asked the VE to describe the job duties of the occupations the VE identified as work within Grout's RFC to determine if they complied with the *Dictionary of Occupational Titles.* The ALJ covered this issue by asking the VE if her testimony was consistent with the DOT. The VE affirmed that it was. Tr. 895.

The work requirements of the occupations identified by the VE are readily available from the DOT. Grout had all the information required to advance her claim by comparing her RFC to the

information in the DOT.  Further questioning of the VE on this topic would provided no additional evidence.

The second and third categories involved questions about the impact of additional limitations which the ALJ excluded from his RFC assessment.  The ALJ was not required to elicit testimony from the VE based on limitations he found unsupported by substantial evidence in the record. *Osenbrock v. Apfel,* 240 F3d 1157, 1165 (9th Cir 2001); *Maiar v. Comm'r,* 154 F3d 912, 915 (9th Cir 1998).

The final category of questions is based on an improper characterization of the record.  Grout argues that the VE might have improperly classified her past work as Check Cashier, DOT 211.462-026, instead of  Cashier Gambling, DOT 211.462-022.  The record shows that she did not.  The VE described the job as "casino cashier" and attributed the DOT code 211.462-022 (Cashier Gambling). Tr. 893-94, 896.

The ALJ's decision to refuse additional questioning on these topics was not error.  A claimant in a disability hearing is not entitled to unlimited cross examination, but rather "such cross-examination as may be required for a full and true disclosure of the facts."  5 USC § 556(d); *Barker v. Sec'y of Health and Human Services,* 882 F2d 1474, 1480 (9th Cir 1989); *Solis v. Schweiker,* 719 F2d 301, 302 (9th Cir 1983).  The proposed lines of questioning would not have provided additional relevant facts.

///

///

///

///

12 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

Based on the foregoing, the ALJ's determination that Grout does not suffer from a disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. Thus, the Commissioner's final decision should be affirmed, and judgment should be entered for the defendant.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **January 3, 2008.** If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 11th day of December, 2007.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge